**Stream Pollution**

30

JOHN D. KILLIAN, 3RD, Deputy Attorney General, and THOMAS D. MCBRIDE, Attorney General, July 16, 1958.—You have requested an opinion from this department interpreting the Pure Streams Law.[1] Specifically, you present the following questions:

1. May the Sanitary Water Board[2] order abatement of sewage discharge or treatment of sewage or industrial waste which is discharged into the underground itself or may the board only act where such discharges are made into underground waters of the Commonwealth?

2. Where sewage or industrial waste is discharged into underground waters, which party, the board or the person or municipality discharging the same, must bear the burden of proof on the question of whether such discharge causes pollution?

3. May the board or the Department of Health acting as enforcement agent of the board prevent the discharge of untreated sewage or industrial waste where: (1) The point of discharge is at or below the ground water table or level and (a) there are no known uses of the ground water in the area, (b) there are known uses of the ground water in the area and (c) wells in the area are polluted; and (2) the point of discharge is above the ground water table or level, but the possibility of pollution of underground waters of the Com-

---

[1] Act of June 22, 1937, P. L. 1987, secs. 1 to 801, as amended by the Act of May 8, 1945, P. L. 435, 35 PS §§691.1 to 691.801, also known as The Clear Streams Act of 1937.

[2] Hereinafter called board.

monwealth exists due to the permeability of the ground or the fact that the rock into which it discharges is likely to be creviced?

4. May the board order second class townships to submit plans for, construct and operate sewage treatment works for the interception and treatment of sewage from public sewers discharging into waters of the Commonwealth?

5. If the answer to question 4 is in the affirmative, is the board's power emasculated by limitations placed upon the power of second class townships to acquire sites for and finance the project, to set up an authority to finance the project or to construct sewers in part of the township out of general funds?

6. May the construction of such a project be prevented by petition of taxpaying property owners of the municipality?

7. May the board order a second class township to construct and operate sewage collection and treatment facilities to serve an area of the municipality which does not have public sewers and in which either of the following conditions prevails: (1) Unsanitary conditions due to sewage on the surface of the ground and in ditches created by ineffective operation of private disposal facilities, but the sewage does not drain into the waters of the Commonwealth; (2) unsanitary conditions by which sewage from private sources on the ground, in ditches or through private sewers drains into the waters of the Commonwealth?

We will discuss and answer these questions seriatim.

I. Sections 201 and 301 of the Pure Streams Law[3] flatly prohibit any person or municipality from discharging sewage[4] or industrial wastes[5] into any of

---

[3] Act of June 22, 1937, supra, 35 PS §§691.201 and 691.301.

[4] Section 1 of the Act of June 22, 1937, supra, as amended, 35 PS §691.1, defines "sewage" to include "any substance that

the waters of the Commonwealth. The term "waters of the Commonwealth" is defined [6] to include "any and all rivers, streams, creeks, rivulets, lakes, dammed water, ponds, springs, *and all other bodies of* surface and *underground water*, or parts thereof, whether natural or artificial within or on the boundaries of this Commonwealth." (Italics supplied)

These provisions clearly reveal the underlying purpose and intent of the Pure Streams Law to be that of preserving the purity of Commonwealth waters by prohibiting the discharge therein of noxious and deleterious sewage and industrial wastes. The act declares discharges into the waters of the Commonwealth to be a public nuisance [7] and against public policy as an unreasonable or unnatural use of such waters. The Pure Streams Law does not prohibit discharges of sewage and industrial waste into the underground

---

contains any of the waste products or excrementitious or other discharge from the bodies of human beings or animals".

[5] Ibid, in which "industrial waste" is defined to mean "any liquid, gaseous or solid substance, not sewage, resulting from any manufacturing or industry, or from any establishment, as herein defined, which causes pollution, as hereinafter defined, and silt, coal mine solids, rock, debris, dirt and clay from coal mines, coal collieries, breakers or other coal processing operations."

[6] Ibid.

[7] Act of June 22, 1937, supra, sec. 3, 35 PS §691.3. As long ago as 1913, the courts recognized that drainage of untreated sewage into flowing waters is a menace to public health. In Commonwealth v. Kennedy, 240 Pa. 214, 87 Atl. 605 (1913), the Supreme Court of Pennsylvania stated, at page 219: ". . . Because sewage is the most efficient medium for the dissemination of infecting germs which do their deadly work in such an infinite variety of insidious ways, not at all dependent upon free access of the public to the stream which the germs pollute, it cannot be said that the 'riparian owners alone have an interest in the stream.' When this deleterious substance pollutes any running stream the public health is endangered thereby. . . ."

itself. The board has no jurisdiction unless it be shown that the polluting substances actually reach and are discharged into or pollute the waters of the Commonwealth.

We note in passing that discharges into the underground per se might constitute public health hazards or nuisances under other laws, the abatement or removal of which might be ordered and enforced by the Department of Health acting under its general powers.[8]

II. No attempt will be made to answer your questions as to which party must bear the burden of proving pollution [9] in the terms in which the question is put since we are of the opinion that no strict rule of "burden of proof" operates in this area.

In making its orders, decisions, rules and regulations, the board's duty is to find all the facts from substantial and legally credible evidence. Upon complaint made in writing by any responsible person, the board has a duty to investigate any alleged source of pollution.[10] If it institutes an investigation on its own motion, the board's duty is the same, to investigate

---

[8] See, for instance, section 2102 of The Administrative Code of April 9, 1929, P. L. 177, as amended, 71 PS §532.

[9] Section 1 of the Act of June 22, 1937, supra, as amended, 35 PS §691.1, defines "pollution" as follows:

" 'Pollution' shall be construed to mean noxious and deleterious substances rendering unclean the waters of the Commonwealth to the extent of being harmful or inimical to the public health, or to animal or aquatic life, or to the use of such waters for domestic water supply, or industrial purposes, or for recreation. The Sanitary Water Board shall determine when the discharge of any industrial waste, or the effluent therefrom constitutes pollution, as herein defined, and shall establish standards whereby and wherefrom, so far as reasonably practicable and possible, it can be ascertained and determined whether any such discharge does or does not constitute pollution as herein defined."

[10] Id., section 604, 35 PS §691.604.

thoroughly and consider all the facts in determining whether a given discharge is polluting the waters of the Commonwealth. In either case the board cannot arbitrarily and capriciously decide that pollution exists. To this extent a problem in the nature of burden of proof is present, that is, there exists an initial burden either on the private complainant or on the board to produce some credible evidence of pollution. Thereafter, all technical problems of burden of proof disappear and the board may adjudicate on the basis of substantial evidence, i.e., all relevant evidence of reasonable probative value.[11] Thus, except for the initial requirement of producing some credible evidence of pollution, it would be improper to say that the board has the burden of proof of pollution; its duty remains constant in all cases: To act only upon the basis of a finding of fact from substantial evidence of pollution and to conduct its own investigation, if necessary, to ascertain the facts.

Nor would it be proper to say that the person or municipality discharging sewage or industrial waste into the waters of the Commonwealth has the burden of disproving pollution. Proceedings before the board are quasi-judicial, and the board is not bound by technical rules of evidence at its hearings.[12] Formal rules of burden of proof and shifting of the burden of going forward with the evidence are inapplicable in such hearings. As we have stated, the board's duty never changes. It must adduce all relevant facts from

---

[11] Section 32 of the Administrative Agency Law of June 4, 1945, P. L. 1388, 71 PS §1710.32. See Sanitary Water Board v. Anthony, 66 Dauph. 250 (1954); Sanitary Water Board v. Stinard, 68 Dauph. 26 (1956); Sanitary Water Board v. Eckert, 71 Dauph. 288 (1958).

[12] Ibid.

evidence of reasonable probative value and base its finding of pollution and adjudication thereon.

The statement of your question would make it seem that pollution must be found in all situations. This is not true, and we deem it advisable at this time to clarify this point.

The question of pollution does not arise where *sewage* is discharged directly into the State's waters. Section 201 of the act, supra, contains an express prohibition against the discharge of sewage into the waters of the Commonwealth, and no reference to pollution is contained within the definition of sewage.[13]

As distinguished from the foregoing is the situation where a *person* discharges sewage ". . . in such manner as to cause pollution of the waters of this Commonwealth. . . ."[14] In the latter instance, the board may order a discontinuance of such discharge, but prerequisite thereto is the board's finding that the discharge causes pollution.

On the other hand, where the discharge is that of *industrial waste*, pollution must always be found. The introduction of nonsewage substances into the waters of the Commonwealth must *cause pollution* in order to constitute "industrial waste" within the Pure Streams Law. The board therefore must make a finding that the discharge causes pollution in order for it to be "industrial waste" within the meaning of the act, the abatement or removal of which the board may order and enforce by suits at law or in equity,[15] preliminary injunction[16] or summary proceedings.[17]

---

[13] See note 4, supra.

[14] Section 202 of the Act of June 22, 1937, supra, 35 PS §691.202.

[15] Section 601 of the Act of June 22, 1937, supra, 35 PS §691.601.

[16] Id., section 602, 35 PS §691.602.

[17] Id., section 603, 35 PS §691.603.

III. The aforesaid discussion indicates that from a legal standpoint there is no difference between discharges at or below the ground water table or level and discharges above the ground water table or level. In either case, in order to fall within the prohibition of the act, the sewage or industrial waste must be introduced "into the waters of the Commonwealth." So long as this requirement is satisfied, the point or level of the discharge is immaterial.

Similarly, it is immaterial whether or not the ground water in the area is being used. The purpose of the act is to prevent discharges which are or may become inimical and injurious to the public health, or to animal or aquatic life, or to the uses of such water for domestic or industrial consumption, or for recreation.[18] Actual *use* of the water into which sewage or industrial waste is discharged is not required by the act.

Nor is it important that wells in the area are polluted; the only requirement is that the waters of the Commonwealth are polluted. Where sewage is discharged into the waters of the Commonwealth, pollution need not be proved except in the limited situations discussed above. In the case of industrial waste, the fact that wells in the area are polluted may be sufficient to sustain a finding of pollution. But so long as waters of the Commonwealth are shown to be polluted, it is immaterial whether any wells in the area are polluted.

In this connection we may observe that notwithstanding pollution by other sources, nothing contained in existing law of the Commonwealth prevents the board from proceeding under the act against any particular person or municipality discharging sewage or industrial waste.[19]

---

[18] Id., section 3, 35 PS §691.3.
[19] Id., section 606, 35 PS §691.606.

Furthermore, we call your attention to the requirement that in the case of industrial waste *actual* pollution must be caused. A mere *possibility* due to the permeability of the ground or the fact that the rock into which the waste is introduced is *likely to be* creviced is not sufficient to sustain a finding of pollution of Commonwealth waters. More affirmative evidence to establish pollution must be shown.

IV. The Pure Streams Law provides for the issuance of orders by the board to municipalities to discontinue discharging sewage from any municipal sewer system into the waters of the Commonwealth.[20] Such orders must provide for the time within which the discharge of sewage must be discontinued, which in the case of a municipality may not exceed two years.[21] Continued discharge after the expiration of the time fixed by the order is declared to be abatable and punishable as a nuisance.[22]

Section 210 of the act[23] provides that whenever the board serves an order upon a municipality[24] to abate its discharge of untreated or inadequately treated sewage, which order is not reversed on appeal, such municipality shall take steps for the acquisition, construction, alteration, repair, extension or completion of a sewage system or sewage treatment works or both, as may be necessary for the treatment of its sewage in compliance with such order.

Section 207 of the act[25] provides that all plans for

---

[20] Id., section 202, 35 PS §691.202.

[21] Id., section 203, 35 PS §691.203.

[22] Ibid.

[23] Id., 35 PS §691.210.

[24] Id., section 1, 35 PS §691.1, defines "municipality" to include any township.

[25] Id., 35 PS §691.207.

the construction or extension of a sewer system by a municipality or for the construction of treatment works or intercepting sewers by a person or municipality shall be approved by the board prior to construction. The section further provides that any construction not approved by the board or operation of treatment works not in accordance with rules and regulations of the board is declared to be abatable as a nuisance.

The cumulative effect of these provisions is to empower the board to order second class townships to submit plans for, to construct and operate sewage treatment works for the interception and treatment of sewage from public sewers discharging into waters of the Commonwealth. The method selected by the legislature of empowering the board so to act is admittedly indirect; nevertheless, the clear import of the provisions of the act, considered as a whole, impels us to the conclusion that the board has the power to order construction, etc., of sewage treatment works.

V. The power of the board discussed in IV above is not rendered inoperative by supposed limitations placed upon the power of townships to acquire sites for and to finance the project, to set up an authority or to construct sewers in part of the township out of general funds. No such emasculating limitations exist. On the contrary, townships are specifically empowered by law to accomplish these things.

The Municipality Authorities Act of 1945 [26] authorizes municipalities, including any township, to create an authority for the purpose, among other things, of constructing, improving, maintaining and operating sewers, sewer systems or parts thereof, and sewage

[26] Act of May 2, 1945, P. L. 382, secs. 1 to 19, as amended, 53 PS §§ 301 to 322.

treatment works, including works for treating and disposing of industrial waste.[27] All powers necessary or convenient to accomplish this purpose are granted to the authority, including the power of eminent domain[28] with which to acquire a site for a project. The power to borrow money, make and issue negotiable notes, bonds, refunding bonds and other evidences of indebtedness or obligations is also granted for the purpose of financing a project.[29] Section 210 of the Pure Streams Law[30] provides for construction out of general funds of the township where it states, inter alia:

". . . The cost of the acquisition, construction, repair, alteration, completion or extension of the sewer, sewerage system or sewage treatment works, as may be necessary to comply with said order, shall be paid out of funds on hand available for such purpose, *or out of the general funds of such municipality not otherwise appropriated. . . .*" (Italics supplied.)

Section 210, supra, continues by providing for additional methods of municipal financing of pollution abatement as follows:

". . . If there be no sufficient funds on hand or unappropriated, then the necessary funds shall be raised by the issuance of bonds, such bond issue to be subject only to the approval of the Department of Internal Affairs. If the estimated cost of the steps necessary to be taken by such municipality to comply with such order is such that the bond issue, necessary to finance such project, would not raise the total outstanding bonded indebtedness of such municipality in

---

[27] Id., section 4 as amended, 53 PS §306.

[28] Id., sections 4 and 11, as amended, 53 PS §§306 and 314.

[29] Id., section 4, as amended, 53 PS §306.

[30] Act of June 22, 1937, supra, 35 PS §691.210.

excess of the constitutional limit imposed upon such indebtedness by the Constitution of this Commonwealth, then, and in that event, the necessary bonds may be issued as a direct obligation of such municipality and retired pursuant to general law governing the issue of such bonds, if the electors of the municipality shall vote in favor of the increase in indebtedness where the consent of the electors is required. If the amount of such bonds necessary to be issued would raise the total outstanding bonded indebtedness of such municipality above such constitutional limitation on such indebtedness, or if the consent of the electors cannot be secured, or if such municipality by its corporate authorities shall determine against the issuance of direct obligation bonds, then such municipality shall be requested to issue non-debt revenue bonds and provide for the payment of the interest and principal of such bonds from funds to be raised by imposing a sewer rental or charge, in accordance with and as authorized by the act, approved the eighteenth day of July, one thousand nine hundred and thirty-five (Pamphlet Laws, twelve hundred eighty-six) . . ."

VI. Your inquiry as to whether construction of a sewage treatment works project may be prevented by petition of the taxpaying property owners of a municipality raises a question principally of local concern and generally of no concern to the board. Whether or not a taxpayer's suit would lie under certain circumstances should make not a particle of difference to the board in its adjudications. Taxpayers' rights and remedies have no effect upon the power of the board to order the abatement or removal of a nuisance.

We need not go into detail with regard to the remedies available to taxpayers and the circumstances under which such remedies may be employed. These

matters are neither properly before the board nor, in this instance, an appropriate subject of inquiry to this department. Suffice it to say that under certain circumstances taxpayers have a right to restrain municipal corporations and their officers from transcending their lawful powers or violating their legal duties.[31] In addition, in the case of second class townships, section 1502 of The Second Class Township Code[32] provides that taxpayers of the township or of the affected sewer district whose property valuation for tax purposes amounts to 50 percentum of the total property valuation may sign and file a written protest in the office of the prothonotary of the court of common pleas against the construction of any sewer, drain or system thereof. Once such protest is filed, the act provides that sewer construction authorized by resolution or ordinance of the board of supervisors of the township shall not be undertaken or proceeded with.

The aforementioned rights and remedies of taxpayers in no way repeal, alter or amend the antipollution powers and duties of the board. Nor can they or should they affect the board in its determinations and orders. Questions relating to taxpayers' rights and remedies may be litigated in suits to abate pollutions,[33] on appeal[34] from the order, decision, rule or regulation of the board, and in any other manner provided by law.

VII. The aforesaid discussion and citation of authorities amply provides the answer to the first part of your seventh inquiry. The Pure Streams Law only applies where sewage is discharged "into the waters

[31] 64 C. J. S. §§2122 to 2172.

[32] Act of May 1, 1933, P. L. 103, as amended by the Act of July 10, 1947, P. L. 1481, sec. 31, 53 PS §66502.

[33] Section 601 of the Act of June 22, 1937, supra, 35 PS §691.601.

[34] Id., section 605, 35 PS §691.605.

of the Commonwealth." The board may not order construction of sewage collection and treatment facilities under this act where unsanitary conditions exist due to sewage on the surface of the ground and in ditches, such sewage not being discharged into the waters of the Commonwealth.[35]

With regard to the second part of your seventh question, the answer is governed by Official Opinion No. 569, dated September 11, 1947.[36]

The precise question considered in Opinion No. 569 was whether the board has the authority to require the supervisors of a second class township wherein private sewage systems discharge sewage into the waters of the Commonwealth, to abate such discharge or to submit for the approval of the board plans for the construction of municipal sewers or a municipal sewer system and a municipal sewage disposal works or sewage treatment plant. The opinion concluded that the Pure Streams Law, considered as a whole, did not intend to impose upon municipalities the responsibility for the pollution of the State's waters by private persons discharging sewage into said waters through private sewer lines. The Pure Streams Law expressly imposes liability for such offending discharges upon a municipality only when it is the municipality which "owns and maintains", or "owning, maintaining and using" the particular sewer system or whose corporate authorities have by law "charge of the sewer system" which causes the pollution. Any proceeding taken by the board on any cause of action arising by reason of any pollution caused by private sewerage disposal

---

[35] See note 8, supra, and text discussion related thereto.

[36] Official Opinions of the Attorney General, 1947-1948, pages 51-59.

must be instituted against the person or persons responsible therefor.

Opinion No. 569 also analyzed the provisions of The Second Class Township Code,[37] and found nothing therein which would impose upon the supervisors of municipalities the duty to abate or to submit plans to the board for the construction of sewers or treatment plants, or both, which when constructed would bring about abatement of pollution of the State's waters caused by the discharge of untreated sewage into such waters, not by municipal sewerage systems, but by private sewers. Although section 1501 of the code[38] authorizes townships to construct sewer systems, Opinion No. 569 holds, at page 57, that "the mere grant of authority to a municipal corporation to construct sewers does not amount to the imposition of a duty to do it. . . ." And although section 702 of the code[39] empowers township supervisors to prohibit nuisances and authorizes them "to remove any nuisance . . . on public or private grounds after notice to the owner to do so . . .", the opinion, at page 57, states that "in the absence of an appropriate ordinance on the subject, a municipality is under no duty to abate a nuisance for which it is in nowise responsible although it may be authorized by statute to abate the same."

We have reexamined Opinion No. 569 in the light of present legal authorities and, finding no change in the law, hereby reaffirm the conclusions reached therein.

Thus to hold does not place the board or the Com-

---

[37] Act of May 1, 1933, P. L. 103, secs. 101 to 2201. as amended, 53 PS §§65101 to 67201.

[38] Id., 53 PS §66501.

[39] Id., 53 PS §65712.

monwealth in a helpless situation as it might seem at first blush. Suits to abate private pollutions may still be brought. Preliminary injunctions [40] may issue where the circumstances require it or the public health is endangered. Summary proceedings [41] may be brought to enforce the abatement orders of the board. Finally, the broad powers [42] of the Department of Health in the general health administration to order nuisances detrimental to the public health to be abated will take care of those peculiar situations where the provisions of the Pure Stream Law are inapplicable.

To sum up our conclusions, we are of the opinion and you are accordingly advised that:

1. The board may not order abatement or treatment of sewage or industrial waste which is discharged to the underground itself. The board may only act where such discharges are made into underground waters of the Commonwealth.

2. No strict rule of burden of proof applies in proceedings before the board. However, since the board's duty is to find all the facts from substantial and legally credible evidence, and since it cannot arbitrarily and capriciously decide that pollution exists, there is an initial burden either on the private complainant or on the board to produce some credible evidence of pollution. Pollution need not be found where sewage is discharged, except in the limited situation of a discharge of sewage by a person not into the waters of the Commonwealth which discharge causes pollution of such waters. On the other hand, where industrial waste is discharged the board must find such discharge causes pollution of Commonwealth waters.

---

[40] Section 602 of the Act of June 22, 1937, supra, 35 PS §691.602.

[41] Id., section 204, 35 PS §691.204.

[42] See note 8, supra.

3. It is immaterial whether the point of discharge is at or below the ground water level and whether the ground water in the area is actually being used. Also, a finding of fact that wells in the area are polluted is not essential since pollution may be shown otherwise. In the case of industrial waste, *actual* pollution must be shown.

4. The effect of the provisions of the Pure Streams Law is to empower the board to order townships of the second class to submit plans for, construct and operate sewage treatment works for the interception and treatment of sewage from public sewers discharging into Commonwealth waters.

5. Townships have the power to acquire sites for and finance a sewage treatment works project, to create an authority to finance the project, and to construct sewers in part of the township out of general funds, so as not to render inoperative the power of the board to order the construction of such project.

6. The question whether construction of such project can be prevented by taxpayer's suit or thwarted by the filing of a formal protest is a matter of local concern and is neither the concern of the board nor, in this instance, an appropriate subject of inquiry to this department.

7. Where unsanitary conditions exist due to sewage from private sewage disposal facilities on the ground and in ditches, which does not drain into waters of the Commonwealth, the Pure Streams Law does not apply. Where such sewage does drain into the State's waters, the board cannot order municipalities to construct sewers or treatment plants, or both, but must rely on other powers and remedies to abate the pollution.